Carter Brothers & Co. vs. Galloway & Burns.

36   473
49 1659

## No. 9009.

CARTER BROTHERS & CO. vs. GALLOWAY & BURNS.—ALLEN, WEST & BUSH, Garnishees.

Creditors of an individual cannot apply the assets of a partnership, of which that individual is a member, to the payment of his debt, to the prejudice of creditors of the partnership.

The partnership could have resisted a wrongful application of its assets, and what it could have done, its creditors can do.

The acquiescence in or consent to this wrongful application by the other members of the partnership cannot destroy or impair the rights of the creditors of the firm upon the firm-assets, after they have been fixed by the attachment of those assets.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor J.

Chas. S. Rice for Plaintiffs and Appellees.

A. Goldthwaite for the Garnishees, Appellants.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs are a business firm in Louisville, Ky. who are creditors of the defendant firm in Trezevant, Tenn. for $2,076.58. This suit upon that indebtedness was instituted here, supported by a writ of attachment, and Allen, West & Bush, a business firm of New Orleans, were served with process of garnishment and interrogatories. They answered denying any indebtedness and their answers were traversed.

On January 4, 1882, Allen, West, & Bush owed Galloway & Burns $335.56. Two weeks before this, Galloway had been in New Orleans and directed Allen, West & Bush to buy two hundred bales cotton futures for April delivery. It was done. Galloway then directed A. W. & B. to put them in his name, saying his partner knew nothing of the transaction. They accordingly opened an account with Galloway individually for this purchase of futures, thus recognizing it as separate from the firm account and outside of the firm business, as indeed it was. This was in the latter part of Dec. 1881.

On Jan. 4, 1882, Galloway having returned to Tennessee wrote A. W. & B. in the name of his firm;—"we enclose you bill lading for four bales cotton as margin on the contract for two hundred" April cotton bought for account W. H. Galloway when he was in your city before the holidays. You will please protect the contract, as the cotton shipped to day and what you have on hand, at eleven cents for middling, will make you safe and the remainder will be shipped as fast as we can buy it."

The firm of Galloway & Burns failed in Tennessee on February 9, 1882, and this attachment issued on the 20th of the same month.

After this failure and after the service of this attachment the individual account with Galloway was closed by charging the loss on the speculation in futures to the firm account, thereby absorbing the $335.56 which A. W. & B. owed Galloway & Burns, and converting them into debtors instead of creditors of A. W. & B. Mr. Allen as a

witness says Galloway's personal indebtedness, and which his firm charged to the account of Galloway & Burns, was about nine hundred dollars, and if they had not so charged it, G & B would have had a credit.

It does not appear whether Galloway owed A. W. & B any sum on account of his speculation in futures at the date of service of garnishment. Most of the cotton was then unsold.

The lower court gave judgment maintaining the attachment and condemned the garnishees to pay the plaintiffs $335.56 with interest from the date of garnishment.

The real question is, whether creditors of an individual can apply the assets of a partnership, of which that individual is a member, to the payment of the individual's debt to the prejudice of creditors of the partnership. In this case there was no diversion by Galloway of the partnership assets to the payment of his debt. It does not appear that he directed his individual debt to be charged in the partnership account, or that he gave any direction whatever about it. The diversion was by the garnishees themselves of their own mere motion. A.W. & B. found Galloway was debtor to them, and they were debtors to Galloway & Burns in a less sum, and they cancelled the one with the other *pro tanto* after other parties had acquired rights upon the partnership fund.

Galloway & Burns could have resisted this wrongful application of their assets, and what they could have done, their creditors can do. Burns in his testimony says he was ignorant of what had been done, and when he learned it objected to it. He seems to have been quiescent and inactive. But even his acquiescence or consent, after the failure of the firm and attachment of its assets by its creditors, could not impair the right of those creditors upon those assets. Caldwell v. Scott, 54 N. Hamp. —; Graw v. Caldwell, 5 Cowen, 489; Everngheim v. Ensworth, 7 Wend. 328.

The garnishees' counsel urge there was no bad faith on their part, and that "they opened an account on their books with Galloway evidently in ignorance of the effect it would have. * * * There was no collusion. There may have been ignorance of the nice distinctions made in courts of law."

It is not a question of good or bad faith, but simply of the legal right of creditors to avail themselves of the effect produced by the conduct of others, and to claim the benefit of the nice distinctions that the law has made which are applicable to the facts in hand.

Judgment affirmed.